

May 12, 2022                                                                                 **John Hsu, Esq.**
914.872.7514 (direct)
John.hsu@wilsonelser.com

## MOTION FOR PROTECTIVE ORDER

**via ECF**

Hon. Edgardo Ramos, U.S.D.J.
Southern District of New York
Thurgood Marshall United States Courthouse
500 Pearl Street
New York, NY 10007

      RE:        *Joan Rosario v Burnsed Trucking Inc.*
                       Docket No.     1:21-cv-07347-ER
                       File No.:        00295.12794

Dear Judge Ramos:

This office represents Defendant Burnsed Trucking Inc. in the above-referenced matter. Pursuant to Fed. R. Civ. P. 26 (c), Defendant respectfully moves this Honorable Court for the issuance of a Protective Order:

(1) allowing Defendant to delay production of surveillance video footage of Plaintiff, until after Plaintiff's deposition, due to concerns that Plaintiff will tailor his testimony based upon what is revealed in the video footage;
(2) shielding the investigators' reports created after surveilling Plaintiff on the basis of the work-product doctrine; and
(3) granting such other and further relief that this Honorable Court deems just and proper.

### I. *Plaintiff's Alleged Injuries*

Plaintiff, Joan Rosario, alleges that on August 25, 2020, he was seriously injured when the forklift he was operating was involved in an incident with a tractor owned by Burnsed Express Inc. and a trailer owned by Burnsed Trucking Inc., and driven by a Burnsed Express Inc. driver Edgar Lewis Hudgins. Plaintiff alleges that his vehicle was caused to crash by the Defendant's tractor trailer as it moved forward from the loading bay. Based upon the discovery responses and medical records

1133 Westchester Avenue | White Plains, NY 10604 | p 914.323.7000 | f 914.323.7001 | wilsonelser.com

Albany, NY | Atlanta, GA | Austin, TX | Baltimore, MD | Beaumont, TX | Birmingham, AL | Boston, MA | Chicago, IL | Dallas, TX | Denver, CO | Detroit, MI
Edwardsville, IL | Florham Park, NJ | Garden City, NY | Hartford, CT | Houston, TX | Jackson, MS | Las Vegas, NV | London, England | Los Angeles, CA
Louisville, KY | McLean, VA | Merrillville, IN | Miami, FL | Milwaukee, WI | Nashville, TN | New Orleans, LA | New York, NY | Orlando, FL | Philadelphia, PA
Phoenix, AZ | San Diego, CA | San Francisco, CA | Sarasota, FL | Seattle, WA | Stamford, CT | St. Louis, MO | Washington, DC | Wellington, FL | White Plains, NY


received thus far, it appears that Plaintiff is alleging to have sustained a variety of injuries to his back, neck, and right hip, knee, shoulder, and elbow, as a result of this accident. Additionally, Plaintiff alleges that he underwent a double level cervical discectomy and fusion at C4-C5 and C5-C6.

### II.   Legal Standard

Rule 34 of the Federal Rules of Civil Procedure governs the discovery of "documents" and "things," including "writings, drawings, graphs, charts, photographs, sound recordings, images, and other data compilations." Fed. R. Civ. P. 34 (a) (1). The scope of discovery under Rule 34 is governed by Rule 26 (b), which provides that a party may obtain discovery of materials that are relevant and not privileged. Fed. R. Civ. P. 26 (b) (1). However, the determination as to whether disclosure should be delayed is a matter of the Court's discretion. *See Cruden v. Bank of New York*, 957 F.2d 961, 972 (2d Cir. 1992) ("A trial court enjoys wide discretion in its handling of pre-trial discovery.").

Under Rule 26 (c) (2), a party seeking to delay the disclosure of surveillance information and videos until after a deposition, may seek a protective order from the court. Fed. R. Civ. P. 26 (c) (1). In order to prevail on a motion for a protective order, the moving party is required to make a showing of "good cause." *Id.*; *see Mitchell v. Fishbein*, 227 F.R.D. 239, 244-45 (S.D.N.Y.) (holding that Rule 26 (c) "places the burden on [the] movant to show good cause" for the protection requested) (internal quotation omitted), *aff'd upon reconsideration*, No. 01-2760, 2005 U.S. Dist. LEXIS 13301 (S.D.N.Y. Jul. 1, 2005); *Giladi v. Albert Einstein Coll. Of Med.*, No. 97-9805 (DC), 1998 U.S. Dist. LEXIS 14783, at *1 (S.D.N.Y. Apr. 15, 1998).

### III.   Analysis

Taking into consideration that the discovery rules "should be interpreted broadly" to achieve the important purposes for which they have been enacted, *see Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 756 F.2d 230 (2d Cir. 1985)), there can be no dispute that the surveillance footage and surveillance reports at issue in this case are "relevant to [each] party's claim[s] or defense[s]." Fed. R. Civ. P. 26 (b) (1). However, the surveillance footage and surveillance reports at issue were obtained two years *after* Plaintiff's accident in this case and *after* this action was commenced, and will be used *solely* for impeachment purposes to show that Plaintiff's claimed injuries are exaggerated. Moreover, the surveillance reports are shielded by the work-product doctrine.

Indeed, "[s]ince biblical times the prospect of tailoring testimony and its ramifications has been understood and condemned." *Poppo v. Aon Risk Services*, No. 00-4165(HB), 2000 U.S. Dist. LEXIS 17588, at *2 (S.D.N.Y. Dec. 6, 2000), and "The consensus on this issue within this circuit" is clear. "Second Circuit courts have delayed the production of audio or video tapes prior to one or more depositions in order to prevent the defendant or its witnesses from tailoring their testimony to conform with their prior recorded statements or actions." *Id.* (citing *Tribune Co. v. Purcigliotti*, No. 93-7222, 1997 U.S. Dist. LEXIS 13165, at *7 (S.D.N.Y. September 2, 1997) (ordering the production of audio and video tapes after the risk of altering testimony was over); *Weinhold v. Witte Heavy Lift, Inc.*, No. 90-2096, 1994 U.S. Dist. LEXIS 4559, at *3 (S.D.N.Y. April 11, 1994)



(holding that delayed disclosure of surveillance video was appropriate to preserve the "tapes as a tool for impeachment of plaintiff's possible exaggeration of his disabilities" and "finding that the surveillance reports [we]re covered by the work product doctrine"); *Daniels v. Nat'l R.R. Passenger Corp.*, 110 F.R.D. 160, 161 (S.D.N.Y. 1986) (holding that it was appropriate to delay disclosure "of surveillance films to be used for impeachment of the plaintiff if he exaggerates his disabilities" until after the plaintiff was deposed); *Erie Conduit Corp. v. Metro. Asphalt Paving Assoc.*, 106 F.R.D. 451, 457 (E.D.N.Y. 1985) (noting that the court had previously denied the defendants access to plaintiff's secretly recorded tapes until after their depositions); *Sherrell Perfumes, Inc. v. Revlon, Inc.*, 77 F.R.D. 705, 707 (S.D.N.Y. 1977) (affirming a Magistrate Judge's Order that delayed the production of surreptitiously tape-recorded conversations until after depositions); *see also, e.g.*, *Caruso v. Target Corp.*, No. 12-2341, 2013 U.S. Dist. LEXIS 72690, *2 (E.D.N.Y. May 22, 2013) ("This court agrees with the widely held view that in balancing the competing interests of the parties with respect to disclosure of surveillance films it is appropriate to delay discovery until after the plaintiff testifies at a deposition."); *Marchello v. Chase Manhattan Auto Fin. Corp.*, 219 F.R.D. 217, 219 (D. Conn. 2004) ("Generally, courts have allowed discovery of surveillance film, conditioning such disclosure by requiring that the defendant need only disclose surveillance films after the plaintiff has been deposed so that defendant may impeach Plaintiff if he exaggerates his injuries." (citations omitted)).

Here, Plaintiff has provided initial disclosures pursuant to Rule 26 in which he attached medical records from Lincoln Hospital, created on the night of the accident, which suggest that Plaintiff did not suffer any traumatic injuries as a result of the accident. It is anticipated that Plaintiff will testify regarding his alleged physical limitations, as well as the impact that his alleged injuries have had on his life, his daily activities, and his ability to work or seek employment. As such, a delay in the production of the surveillance footage of Plaintiff is appropriate to prevent Plaintiff from tailoring his testimony to be in conformity with the surveillance video.

Based on the case law in this Circuit, "in order to protect the value of surveillance films to be used for impeachment of the plaintiff if he exaggerates his disabilities, while still serving the policy of broad discovery, it [is] appropriate to require disclosure of such impeachment materials only after the depositions of the plaintiff . . . , so that [his] testimony [will] be frozen." *Daniels*, 110 F.R.D. at 161; *Weinhold*, 1994 U.S. Dist. LEXIS 4559, at *3 ("In order to protect the value of surveillance tapes as a tool for impeachment of plaintiff's possible exaggeration of his disabilities, courts have found it appropriate to require disclosure of such impeachment materials only after plaintiff's deposition has been taken. In this way, the recording of plaintiff's sworn testimony will preclude any temptation on his part to alter his testimony based on what is seen on the surveillance tapes, yet the policy of broad discovery is nonetheless maintained." (citations omitted)).

In the alternative, if the Court is not satisfied that the "good cause" standard has been met, then Defendant requests that the Court review the video footage *in camera* prior to ruling on its disclosure, so that the Court will see that the footage already contradicts Plaintiff's claimed injuries and limitations.

Further, Defendant avers that the report prepared by its investigators are protected by the work-product privilege. *See Hickman v. Taylor*, 329 U.S. 495, 510 (1947); *see also* Fed. R. Civ. P. 26 (b) (3). Like the surveillance video footage, the report was prepared by Defendant's investigators



*after* this action was commenced and specifically for this litigation. *Weinhold*, 1994 U.S. Dist. LEXIS 4559, at *6 ("Three conditions must be met to earn work product protection. The material must (1) be a document or tangible thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by or for his representative." (citation omitted)).

Accordingly, Defendant respectfully moves for this Honorable Court for the issuance of a protective order: (1) allowing Defendant to delay production of surveillance video footage of Plaintiff, until after Plaintiff's deposition; (2) shielding the investigators' reports created after surveilling Plaintiff on the basis of the work-product doctrine; and (3) granting such other and further relief that this Honorable Court deems just and proper.

Dated: White Plains, New York
May 12, 2022

Respectfully submitted,

**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**

BY:   S/ John Hsu
John Hsu, Esq.
*Attorneys for Defendant*
*Burnsed Trucking Inc.*
1133 Westchester Avenue
White Plains, NY 10604
(914) 872-7514
John.hsu@wilsonelser.com
File No.: 00295.12794